IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| JOHN R. PAYLOR, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | 2:14cv01688 |
| | ) | **Electronic Filing** |
| ALLEGHENY COUNTY, FAMILY DIVISION/ADULT SECTION DOMESTIC RELATIONS TITLE IV AGENCY, | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

Proceeding *pro se*, John R. Paylor ("plaintiff") commenced this action against "Allegheny County, Family Division/Adult Section Domestic Relations Title IV Agency" ("defendant") by filing a motion to proceed *in forma pauperis* and attaching to it a "complaint" seeking relief for defendant's alleged violations of (1) his civil rights and (2) federal statutes. These violations stem from orders freezing and seizing funds from his bank account and holding him in contempt as part of the process of enforcing an order of child support. Compl. at ¶ 4-22. Plaintiff contends that these orders are unlawful because his only source of income is a veterans' pension, which he alleges is exempt from all legal process and cannot be used to satisfy his child support obligations. Compl. at ¶ 13. For the reasons set forth below, plaintiff's motion will be granted and the complaint will be dismissed.

The United States Court of Appeals for the Third Circuit has instructed the district courts to utilize a two-step analysis to determine whether to direct service of a complaint where the plaintiff seeks to proceed *in forma pauperis*. First, the court must determine whether the litigant is indigent within the meaning of 28 U.S.C. § 1915(a). Second, the court must determine whether the complaint is frivolous or malicious under 28 U.S.C. § 1915(d). Roman v. Jeffes,

904 F.2d 192, 194 n.1 (3d Cir. 1990). The court finds the plaintiff to be without sufficient funds to pay the required filing fee. Thus, he will be granted leave to proceed *in forma pauperis*.

In Neitzke v. Williams, 490 U.S. 319 (1989), the Supreme Court identified two types of legally frivolous complaints: (1) those based upon indisputably meritless legal theory, and (2) those with factual contentions which clearly are baseless. Id. at 327. An example of the first is where a defendant enjoys immunity from suit, and an example of the second is a claim describing a factual scenario which is fanciful or delusional. Id. In addition, Congress has expanded the scope of § 1915 to require that the court be satisfied that the complaint states a claim upon which relief can be granted before it directs service; if it does not, the action shall be dismissed. 28 U.S.C. § 1915(e)(2)(B)(i).

A review of plaintiff's "complaint" reveals that it is subject to dismissal for a number of reasons. First, plaintiff's allegations against defendant and the individuals identified in the body of the complaint fail to state a claim and/or are predicated on indisputably meritless legal theory.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Under the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery. Id. at 544. In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by

2

presenting "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are "'merely consistent with' a defendant's liability." Id. Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. Id. at 1949-50; see also Twombly, 550 U.S. at 563 n. 8 (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)); accord Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1997) ("courts, when examining 12(b)(6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 556 U.S. at 678 ("'The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'"); Phillips v.

3

County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same). Instead, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ... [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Phillips, 515 F.3d at 235; see also Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("'The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting Phillips, 515 F.3d at 235) (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

It also is well settled that pleadings filed by *pro se* litigants are to be construed liberally. McNeil v. United States, 508 U.S. 106, 113 (1993); Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002). And in such circumstances the court has an obligation to "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." Higgins, 293 F.3d at 688 (quoting Holley v. Dept. of Veterans Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)).

Plaintiff's allegations stem from prior proceedings in state court that led to an order of child support. He was then held in contempt for failure to pay the support and his pension funds for partial disability were seized from his bank account. Plaintiff explicitly has named the Family Law Division of the Allegheny County Court of Common Pleas as the only defendant. Specific individuals identified as being involved in the referenced process are assistant at the Allegheny County Law Department Daniel Butler, Domestic Relations Officer Weber, Domestic Relations Officer Mary Ann Bach, Judge Alexander Bicket of the Family Law Division of the

Allegheny County Court of Common Pleas, Judge Paul Cozza of the Family Law Division of the Allegheny County Court of Common Pleas and court-appointed attorney Gary Ludin, Esquire.

Plaintiff asserts that this court has jurisdiction over the matter because the Allegheny County Court of Common Pleas exceeded its authority by incarcerating him and seizing funds from his bank account, which contained his veterans' benefits. In doing so, "defendant" purportedly violated the Supremacy Clause and plaintiff's Fourth Amendment, Eighth Amendment and Fourteenth Amendment due process rights. Compl. at ¶ 3. Plaintiff also demands damages for false imprisonment, interruption of the parent and child relationship, and malicious prosecution. Id. at ¶ 22. Plaintiff also requests a temporary restraining order and preliminary injunction preventing the "defendant" from subjecting his veterans' pension to legal process. Amended Mot. for TRO. and Prelim. Inj. (Doc. 4) at 11.

Even reading plaintiff's allegations in the light most favorable to him, the "complaint" against the named defendant is meritless. Proceeding against this entity clearly is predicated on indisputably meritless legal theory.

Suits against the state are barred by the Eleventh Amendment.[1] Alabama v. Pugh, 438 U.S. 781, 781-82 (1978). Eleventh Amendment immunity applies to suits against the state regardless of the relief sought. In re Kish, 212 B.R. 808, 814 (Bkrtcy D. N.J. 1997) ("the 'jurisdictional bar [of the Eleventh Amendment] applies regardless of the relief sought'") (citing Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100–01 (1984)); see also Cory v. White, 457 U.S. 85, 90 (1982) ("It would be a novel proposition indeed that the Eleventh

---

[1] The Eleventh Amendment "enacts a sovereign immunity from suit, rather than a nonwaivable limit on the federal judiciary's subject-matter jurisdiction." Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997).

5

Amendment does not bar a suit to enjoin the state itself simply because no money judgment is sought.").

Suits against a state agency or a state department are considered to be suits against a state which are barred by the Eleventh Amendment. In re Kish, 221 B.R. 118, 124-25 (Bkrtcy. D. N.J. 1998) (quoting Geis v. Board of Educ. of Parsippany–Troy Hills, Morris Cnty., 774 F.2d 575, 580 (3d Cir.1985)); accord Hafer v. Melo, 502 U.S. 21, 25 (1991); Haybarger v. Lawrence County Adult Probation And Parole, 551 F.3d 193, 198 ("the Eleventh Amendment applies to suits against subunits of the State") (citing Pennhurst, 465 U.S. at 100)). And suits against state officials for acts taken in their official capacity must be treated as suits against the state. Hafer, 502 U.S. at 25.

"The Commonwealth [of Pennsylvania] vests judicial power in a unified judicial system, and all courts and agencies of [that system] are part of the Commonwealth government rather than local entities." Haybarger, 551 F.3d at 198 (citing Benn v. First Judicial Dist. of Pa., 426 F.3d 233, 240-41 (3d Cir. 2005) and Pa. Const. art. V, § 1)). It likewise is settled that "Pennsylvania's judicial districts...are entitled to Eleventh Amendment immunity." Id.

The Domestic Relations Section is a subunit of the Allegheny County Court of Common Pleas, and thus it is a subunit of the Commonwealth's unified judicial system. See 42 Pa.C.S.A.§ 961 ("Each court of common pleas shall have a domestic relations section . . ."); accord Chilcott v. Erie County Domestic Relations, 283 Fed. Appx. 8, 10 (3d Cir. 2008) ("Furthermore, the District Court properly dismissed the suit against the Erie County Prison and the Erie County Domestic Relations Section of the Erie County Court of Common Pleas because the Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens.").

The Allegheny County Domestic Relations Section is a subunit of the Allegheny County Court of Common Pleas. The Allegheny County Court of Common Pleas is a state entity. Immunity attaches to the actions of the Allegheny County Domestic Relations Section pursuant to the Eleventh Amendment. Accordingly, plaintiff's claims against this entity must be dismissed. See Bryant v. Cherna, 520 F. App'x 55, 57 (3d Cir. 2013) ("[T]he state courts of Pennsylvania, including their domestic relations sections, are entitled to immunity from suit in federal court pursuant to the Eleventh Amendment. Accordingly, we agree that both the Family Division and the Domestic Relations Section [of Allegheny County] are immune from suit.")

To the extent plaintiff's "complaint" should be construed as setting forth claims against the individuals referenced therein in their individual capacity, such claims likewise are subject to dismissal. Plaintiff's claims against Judge Bicket and Judge Cozza ("the judicial defendants") are barred by judicial immunity. Immunity from suit applies to judicial officers in the performance of their official duties, thereby relieving them from liability for judicial acts. Azubuko v. Royal, 443 F.3d 302, 303 (3d Cir. 2006) (citing Mireles v. Waco, 502 U.S. 9 (1991)). Furthermore, a "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Azubuko, 443 F.3d at 303 (citing Stump v. Sparkman, 435 U.S. 349, 356-57 (1978)).

Plaintiff's claims are all founded on orders entered against him in Family Court proceedings. As plaintiff's claims against the judicial defendants are based on the performance of their duties, the judicial defendants clearly are entitled to judicial immunity on all claims advanced against them. As a result, all claims against the judicial defendants must be dismissed.

Plaintiff's claims against Domestic Relations Officers Weber and Bach also are barred by judicial immunity. The protections of judicial immunity extend to those who perform "quasi-judicial" functions. Gallas v. Supreme Court of Pa., 211 F.3d 760, 772-73 (3d Cir. 2000) (citing Forrester v. White, 484 U.S. 219, 225 (1988) (the protections of judicial immunity extend to officials "who perform quasi-judicial functions"); Moore v. Brewster, 96 F.3d 1240, 1244 (9th Cir.1996) ("[Defendant], while acting as Clerk of the United States District Court ... in many of his actions performed quasi-judicial functions.... Even if ... [defendant] deceived [plaintiff] regarding the status of the [supersedeas] bond and improperly conducted hearings to assess costs, all in coordination with Judge Brewster, such acts would fall within [the defendant's] quasi-judicial duties and are thus protected by absolute immunity."); McArdle v. Tronetti, 961 F.2d 1083, 1085 (3d Cir. 1992) (holding that a prison physician who prepared an evaluation of an inmate pursuant to a judge's request was "functioning as an arm of the court" and "[a]s such, he was an integral part of the judicial process and is protected by the same absolute judicial immunity that protects Judge Connelly"); Dellenbach v. Letsinger, 889 F.2d 755, 763 (7th Cir. 1989) ("[W]e conclude on the facts before us that the court personnel are entitled to absolute quasi-judicial immunity for their alleged acts [undertaken] pursuant to the judge's instructions.").

In Lepre v. Tolerico, the Third Circuit ruled that Lackawanna County officials were entitled to quasi-judicial immunity because they acted pursuant to a valid bench warrant issued in a child support arrearage proceeding. 156 Fed. Appx. 522, 525 (3d Cir. 2005); see also Waits v. McGowan, 516 F.2d 203, 206-07 (3d Cir. 1975) (same). In other words, ". . . where the defendant is directly involved in the judicial process, he may receive immunity in his own right for the performance of a discretionary act or he may be covered by the immunity afforded the

judge because he is performing a ministerial function at the direction of the judge." Waits, 516 F.2d at 206.

All of Weber and Bach's actions were undertaken as official actions by officers of the Domestic Relations Department and/or pursuant to Judge Bicket or Judge Cozza's orders. Consequently, plaintiff's complaint fails to set forth factual allegations that can overcome the quasi-judicial immunity that inures to these defendants under the circumstances.

Plaintiff's claims against defendant Butler likewise are for actions he took as an attorney for the Allegheny County law department, the entity tasked with enforcement of child support orders. Prosecutors have immunity from § 1983 claims as to actions taken in the performance of their official duties. Fuchs v. Mercer County, 2006 WL 2642408 *2 (W.D. Pa. September 13, 2006) (Schwab, J.) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976) and Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992)). A state prosecuting attorney, acting within the scope of his or her duties as a prosecutor, has absolute immunity from civil suit. Imbler, 424 U.S. at 428.

The United States Court of Appeals for the Third Circuit has recognized the applicability of prosecutorial immunity in the context of child support proceedings. In this regard "attorneys who prosecute dependency proceedings on behalf of the state [are] absolutely immune from suit for all of their actions in preparing for and prosecuting such dependency proceedings." B.S. v. Somerset Cnty., 704 F.3d 250, 262 (3d Cir. 2013) (quoting Ernst v. Child & Youth Services of Chester County, 108 F.3d 486, 488-89 (3d Cir. 1997)); See Cherna, 520 F. App'x at 58 (same).

Here, Butler's involvement in plaintiff's proceedings is limited to the positions he took in the performance of his duties in representing Allegheny County. Therefore, he is protected by prosecutorial immunity and all of plaintiff's claims against him must be dismissed.

9

Plaintiff's claim against attorney Ludin fails because he did not act under color of state law as required to pursue a § 1983 claim. A § 1983 claim provides a vehicle for vindicating a violation of federal rights. Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). A cause of action under § 1983 has two elements: a plaintiff must prove (1) a violation of a right, privilege or immunity secured by the constitution or laws of the United States (2) that was committed by a person acting under color of state law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996); Kelly v. Borough of Sayreville, 107 F.3d 1073, 1077 (3d Cir. 1997); Berg v. Cty. of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000) ("The Plaintiff must demonstrate that a person acting under color of law deprived him of a federal right.") (citing Groman, 47 F.3d at 633)).

Although attorneys are officers of the court, they are not "state actors" under § 1983. Jennings v. Machen, No. 2:13-CV-796, 2013 WL 5745611, at *6 (W.D. Pa. Oct. 23, 2013) (McVerry, J.) (quoting Polk County v. Dodson, 454 U.S. 312, 318, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)). "Court-appointed counsel…[is] absolutely immune from civil liability under § 1983 when acting within the scope of their professional duties." Id. (quoting Black v. Bayer, 672 F.2d 309, 317 (3d Cir.), cert. denied, 459 U.S. 916, 103 S.Ct. 230, 74 L.Ed.2d 182 (1982).

Plaintiff's "complaint" does not allege facts that would negate the immunity afforded to Ludin in his role as an attorney representing plaintiff. Plaintiff has not set forth a plausible basis to infer that Ludin was or could have been acting outside the scope of his professional duties. Accordingly, Ludin is protected by absolute immunity and plaintiff's claims against him must be dismissed.

Second, even assuming that plaintiff's "complaint" can and should be interpreted to set forth claims against the identified individuals, it equally is clear that such claims fail for

substantive reasons as well. Plaintiff's reliance on the Due Process Clause of the Fourteenth Amendment is wide of the mark.

Where a state provides a system of notice and opportunity to challenge the deprivation of property, it affords the process that is required by the Fourteenth Amendment.

"[A] state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by [an entity charged with fulfilling a constitutional or congressionally imposed mandate]." DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 597 (3d Cir.1995), overruled on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392 (3d Cir.2003). In other words, when a state "affords a full judicial mechanism with which to challenge the [] decision" in question, the state provides adequate procedural due process, whether or not the plaintiff avails him or herself of the provided appeal mechanism. Id. (quoting Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 682 (3d Cir.1991)).

Here, plaintiff's submissions indicate he had notice that he was in arrears with his child support payment and that the Commonwealth intended to utilize enforcement mechanisms, including holding him in contempt or seizing his assets, to ensure compliance with his child support obligations. On April 25, 2014, Judge Bicket found plaintiff in contempt for failure to pay child support. Compl. at ¶ 7. On July 8, 2014, plaintiff had a compliance hearing before Domestic Relations Officer Bach, who rejected plaintiff's exemption arguments and recommended another contempt hearing. Compl. at ¶ 8. At a subsequent hearing Judge Cozza found plaintiff in contempt with a purge amount of $1,500.00. Compl. at ¶¶ 9-13. On October 15, 2014, the "defendant" seized $2,562.17 from plaintiff's bank account. Compl. at ¶ 4.

On November 4, 2014, plaintiff had a hearing before Domestic Relations Officer Weber, who denied his "Petition to Release Asset FD # 01-03810." Compl. at ¶ 6. Clearly, the plaintiff was aware of his outstanding support obligation and the potential consequences of his continued failure to pay, including seizure of his assets and being held in contempt.

Plaintiff's submissions also reveal that he raised in state court the very grounds which he currently advances to support the instant lawsuit. Compl. at ¶ 6 ("Plaintiff again produce[d] federal statutes…proving that his VA pension is exempt from garnishment" before DRO Weber), ¶ 8 ("Plaintiff presented federal statutes…that his VA pension is exempt from…legal process" before DRO Bach), and ¶¶ 12-13 (Plaintiff's argued that his veterans' pension is "not subject to legal process" before Judge Cozza). According to plaintiff, the state actors rebuffed his contentions, held him in contempt, and seized funds from his bank account. Id.

Plaintiff's contention that "defendant" denied him due process is unavailing. In fact, plaintiff had multiple opportunities, including a motion hearing scheduled at his request, to present evidence and contest the legality of the seizure and contempt finding. See Love v. Love, 33 A.3d 1268, 1281 (Pa. Super. 2011) (quoting Nicholson v. Combs, 550 Pa. 23, 703 A.2d 407, 414 (1997)) ("A support…order is a creation of statute… which is enforceable by operation of law. Proceedings relative to such orders contain due process requirements, evidentiary findings and involve scrutiny by the court as to their validity…In return for this closely proscribed legal proceeding with its attendant safeguards and judicial findings, the legislature has extended the power to bring about compliance by granting courts the right to attach property and wages and to incarcerate willfully delinquent obligors."). Plaintiff cannot seek redress in federal court simply because he did not obtain a favorable result in the proceedings before a state tribunal; this is not a denial of due process.

In short, plaintiff had notice of the Commonwealth's actions, the ability to be heard on any issue relevant to the proceeding and to challenge any initial determination or adverse ruling. He cannot elect to forego or disregard the state process that had the ability to eliminate any perceived inaccuracy or unfair advantage inuring to the Commonwealth and then claim that his due process rights have been violated. All the process that is due has been received under such circumstances. See Marshall v. Lauriault, 372 F.3d 175, 186 (3d Cir. 2004) (observing that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner" and concluding that where a party had adequate notice under the circumstances and the ability to pursue its claim in state court system and receive redress, the party has been afforded all the process that is due.); DeBlasio, 53 F.3d at 597 (same).

Moreover, Pennsylvania's judicial system supplied ample opportunities for plaintiff to challenge defendant's efforts to enforce an order of child support against him. The Pennsylvania Superior Court has "exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas, regardless of the nature of the controversy." 42 Pa. C. S. § 742. The Superior Court has jurisdiction to review support related proceedings. See Jaskiewicz v. Jaskiewicz, 473 A.2d 183 (Pa. Super. 1984) (reviewing modification of child support order). Likewise, the Superior Court also has jurisdiction to review orders of contempt issued in child support proceedings, including those involving a purge condition. See Foulk v. Foulk, 789 A.2d 254, 258 (Pa. Super. 2001) (reviewing an order of contempt with purge condition for failure to pay spousal support). Finally, the Superior Court has jurisdiction to review orders of garnishment[2]

---

[2] Plaintiff contends that his veterans' pension has been "garnished," but the facts of his "complaint" do not support this allegation. Garnishment requires a creditor to petition the court "to order a third party who is indebted to or is bailee for the debtor to turn over to the creditor any of the debtor's property (such as wages or bank accounts) held by that third party." Black's Law Dictionary (9th ed. 2009). There is no indication that plaintiff's veterans' benefits were

13

issued in support proceedings. See Laws v. Laws, 758 A.2d 1226 (Pa. Super. 2000) (reviewing garnishment imposed for purposes of child support). And while the Superior Court's "scope of review in support proceedings is limited to abuse of discretion, See Jaskiewicz, 473 A.2d at 184, a lower court abuses its discretion where "it misapplies the law, exercises its discretion in an unreasonable manner, or does not follow legal procedure." Foulk, 789 A.2d at 258. Thus, any actual error in applying the law to plaintiff's case – including plaintiff's contention that the defendant misapplied the law in finding his veterans' pension benefits in his bank account were subject to "garnishment, attachment, levy, seizure and all legal process" - was subject to correction through the appellate process.[3]

In short, plaintiff's allegations make clear that he had notice and an opportunity to be heard as a well as sufficient avenues for review and correction of any actual legal error. These circumstances demonstrate that any claim predicated on the Due Process Clause of the Fourteenth Amendment is subject to dismissal.

Finally, even assuming *arguendo* that plaintiff's claims are not barred by judicial immunity, plaintiff would not prevail on the merits. In Rose v. Rose, the plaintiff challenged a Tennessee court for holding him in contempt for failure to pay child support when his only

---

subject to a writ of garnishment or turned over by the Veterans' Administration. If plaintiff's funds were in fact garnished, the Veterans' Administration, not plaintiff, would have standing to contest the garnishment. See Sanchez Dieppa v. Rodriguez Pereira, 580 F. Supp. 735, 735 (D.P.R. 1984) (granting Veterans' Administration's motion to quash writ of garnishment).
[3] Plaintiff's efforts to invoke the Fourth and Eighth Amendments are misplaced. It is well settled that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, [and] not [] more generalized [notions from other constitutional provisions]" are to guide the court's analysis of the particular claim advanced. Graham v. Connor, 490 U.S. 386, 395 (1989); accord County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) (same). The Fourth Amendment does provide a more explicit source for protection of the rights involved where the conduct complained of flowed directly from legal process afforded by a state legislature and action by a state court in implementing that process. Further, there is nothing cruel or unusual about the imposition of incarceration following a finding of contempt of court.

source of income was his veterans' pension. 481 U.S. 619, 621-22 (1987). The plaintiff in Rose contended, *inter alia*, that federal law preempted the state court's jurisdiction over his veterans' benefits, which he alleged were exempt from legal process under 38 U.S.C. § 3101[4]. Id. at 630-34. The Supreme Court examined the legislative history of the exemption statute and determined that veterans' benefits were intended to "provide reasonable and adequate compensation for disabled veterans *and their families*." Id. at 630 (citing S.Rep. No. 98–604, p. 24 (1984)). The Supreme Court held that federal law did not preempt the Tennessee court's jurisdiction to enforce an order of child support because there was no conflict between state and federal law. Id. It also determined that the state court's enforcement efforts were consistent with the legislative intent of the federal statutes relied on by the plaintiff to argue exemption. Id. In other words, "the purpose of the federal exemption statute is to serve as a shield for the veteran and his dependents, not to serve as a sword to be used by the veteran against his dependents." See Case v. Dubaj, No. CA 08-347, 2011 WL 3806291, at *4 (W.D. Pa. Aug. 29, 2011) (McLaughlin, J.) (quoting Gerold v. Gerold, 6 Or.App. 353, 488 P.2d 294, 295 (Ore.App.1971.))

The Supreme Court's analysis in Rose would apply equally to plaintiff's claim that "defendant" unlawfully seized his bank account for purposes of child support. See 2011 WL 3806291 at *5 (W.D. Pa. Aug. 29, 2011) (applying the analysis in Rose and holding that federal law did not "bar the seizure of the plaintiff's bank account to satisfy his family support obligations") (citing Rose, 481 U.S. at 635). Applying the Court's analysis in Rose, the Allegheny County Court of Common Pleas' efforts to enforce a valid order of child support

---

[4] The plaintiff also argued that his veterans' benefits were exempt from garnishment under two provisions of the Child Support Enforcement Act, 42 U.S.C. § 659(a) and § 662(f)(2). Rose, 481 U.S. at 634-35.

against plaintiff by holding him in contempt, freezing his bank account and seizing its contents were not contrary to federal law.

It follows that the complaint is grounded in indisputably meritless legal theory and otherwise fails to state a claim upon which relief can be granted. Consequently, it must be dismissed. An appropriate order follows.

Date: February 10, 2015

s/ David Stewart Cercone<br>David Stewart Cercone<br>United States District Judge

cc: John R. Paylor
P.O. BOX 762
Braddock, PA 15104

(*Via First Class Mail*)